1999-NMSC-033

989 P.2d 419

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Pedro GONZALES, Defendant–Appellant.**

No. 25,084.

Supreme Court of New Mexico.

Aug. 4, 1999.

Rehearing Denied Sept. 3, 1999.

D. Eric Hannum, Albuquerque, for appellant.

Patricia A. Madrid, Attorney General, Ralph E. Trujillo, Assistant Attorney General, Santa Fe, for appellee.

## OPINION

MINZNER, Chief Justice.

{1} Defendant Pedro Gonzales appeals from a conviction for first degree willful and deliberate murder, *see* NMSA 1978, § 30–2–1(A)(1) (1994), as well as from a conviction for second degree murder, *see* § 30–2–1(B), with a firearm enhancement, *see* NMSA. 1978, § 31–18–16 (1993). We have jurisdiction pursuant to Article VI, Section 2 of the New Mexico Constitution. On appeal, Defendant contends that the district court erred in admitting into evidence the hearsay declaration of an alleged co-conspirator as a statement against his interest and in limiting cross-examination of a State witness. He also contends that the State failed to introduce sufficient evidence to support the murder convictions. We affirm.

### I.

{2} In the early morning of March 10, 1995, James Morgan and Debra April Jaramillo each died of a single gunshot wound to the head. At the time of death, Morgan was driving his green Ford Thunderbird; Jaramillo was a passenger. Investigators found two .25–caliber shell casings in the back seat and rear deck of the car, a fingerprint that implicated Francisco Cuellar outside the driver's side, and a shoe print that implicated Defendant within the car. Angelo Labadie [1]

---

1. In a separate proceeding, Labadie's cousin, Aaron Martinez, was convicted of conspiracy to murder Jaramillo, among other crimes. *See*

*State v. Martinez*, 1999–NMSC–018, ¶ 11, 127 N.M. 207, 979 P.2d 718. We recently affirmed his convictions. *See id.* ¶¶ 1, 36.

and Donald Gregory connected Defendant with the homicides.

{3} At trial, Labadie testified that in early March 1995, he ran away from Española to Albuquerque, where he sold crack cocaine for Defendant. Labadie explained that he accompanied Defendant on a delivery of crack to Jaramillo; Defendant allegedly gave Jaramillo the crack she had ordered and instructed her to pay the rest of the money she owed him (about $600) at some later time. Labadie testified further that on the morning of March 10, 1995, just after the killings occurred, he heard Cuellar "bragging" that he had been in the car with Morgan and Jaramillo while they were cruising around doing drugs, that he had shot Morgan and Jaramillo, and that Defendant had paid him eight rocks of crack for killing Jaramillo. Defendant objected to Labadie testifying about Cuellar's alleged statement, but the district court overruled the objection, holding that Cuellar's account of the killing was a statement against interest.

{4} Gregory testified on direct examination that around 4:00 a.m. on March 10, Defendant, Cuellar, Jaramillo, and Morgan departed Morgan's home in Morgan's green Thunderbird and that Gregory declined an invitation to accompany the group. Defense counsel attempted to impeach Gregory on cross-examination with evidence of his September 1996 plea agreement and conviction for criminal sexual contact of a minor. Defense counsel explained that he was not implying a deal was made, but that he should be allowed to inquire as to bias when the witness had received a benefit from the State. The district court ruled that defense counsel could not impeach Gregory with the specifics of the prior, unrelated conviction, noting that although such information may have been somewhat relevant, its relevance was outweighed by the dangers of unfair prejudice and confusion.

## II.

{5} Defendant asserts that Cuellar's declaration should have been excluded under the hearsay rule, because it did not qualify as an exception to the rule. *See* Rule 11–802 NMRA 1999. The trial court admitted the declaration as a statement against interest. *See* Rule 11–804(B)(3) NMRA 1999. We review for an abuse of discretion. *See State v. Torres*, 1998–NMSC–052, ¶ 15, 126 N.M. 477, 971 P.2d 1267.

{6} A statement against *penal* interest is a recognized exception to the hearsay rule; however, this exception is available only if the declarant is unavailable. *See* Rule 11–804(B)(3). Our rules of evidence define a statement against penal interest as one that "at the time of its making . . . so far tended to subject the declarant to . . . criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." *Id.* Defendant does not argue that Cuellar was available at trial. We therefore assume, without deciding, that Cuellar was an unavailable declarant for purposes of Rule 11–804(B)(3). *See Torres*, 1998–NMSC–052, ¶ 16, 126 N.M. 477, 971 P.2d 1267 ("[Defendant] does not argue on appeal that [the declarant] was not unavailable as that term is defined in Rule 11–804(B)(3), so we deem that argument to be abandoned."). We agree with the State that Cuellar's declaration qualifies as a statement against penal interest.

{7} We considered a statement against penal interest in *State v. Torres*, 1998–NMSC–052, ¶¶ 9–19, 126 N.M. 477, 971 P.2d 1267. In that case, we accepted the defendant's argument that, in applying Rule 11–804(B)(3), we should follow the federal practice of conducting statement-by-statement analyses of declarants' narratives and holding as inadmissible purely "collateral statements." *Id.* ¶ 14 (citing *Williamson v. United States*, 512 U.S. 594, 600–03, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994)). Defendant contends that "Cuellar's alleged assertion that he had been paid by Defendant is not a necessary part of his tale. It is a separate, freestanding, hearsay statement. Having already admitted to killing two people, it cannot reasonably be viewed as a statement against Cuellar's penal interest." We disagree. Defendant "dissect[s] [Cuellar's statement] in such a way that [it] lose[s] any contextual meaning." *Id.*

{8}   Common law courts have long recognized the statement-against-interest exception to the hearsay rule. *See* 5 John Henry Wigmore, *Evidence in Trials at Common Law* § 1455, at 323 (James H. Chadbourn rev. ed.1974). Although these courts originally interpreted the exception broadly, they eventually precluded declarations against *penal* interest from qualifying and limited the exceptions to declarations implicating proprietary or pecuniary interests. *See id.* § 1476, at 349–58. Influential commentators criticized the judicial rejection of statements against penal interest, *see, e.g., id.* § 1477, at 359, and overtime, many American courts came full circle in recognizing these statements as appropriate exceptions to the hearsay rule, *see id.* § 1477, at 360–62 & n. 7. New Mexico has joined the majority of American jurisdictions in following the federal judiciary's lead by returning to a broad interpretation of the statement-against-interest exception. *See* David F. Binder, *Hearsay Handbook* § 29.02, at 516–18 (3d ed. 1991 & Supp.1998).

{9}   A broad interpretation of the exception is appropriate. "The basis of the exception is the principle of experience that a statement asserting a fact distinctly against one's interest is unlikely to be deliberately false or heedlessly incorrect, and is thus sufficiently sanctioned, though oath and cross-examination are wanting." 5 Wigmore, *supra,* § 1457, at 329; *accord Williamson,* 512 U.S. at 599, 114 S.Ct. 2431; 4 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 496, at 813–15 (2d ed.1994); 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 804.06[1], at 804–46 (Joseph M. McLaughlin ed., 2d ed.1999). The basis of the exception applies whether a declaration implicates proprietary, pecuniary, or penal interests. The trial court's decision to admit Cuellar's statement is consistent with the basis for the exception.

{10}   Cuellar's declaration that Defendant paid him for the killings qualifies as a statement against penal interest on two grounds. First, the assertion implicates Cuellar for the crime of first degree willful and deliberate murder, *see* § 30–2–1(A)(1), and exposes him to liability for other crimes, including conspiracy to commit first degree willful and deliberate murder, *see id.;* NMSA 1978, § 30–28–2 (1963), and possession of a controlled substance, *see* NMSA 1978, § 30–31–23 (1990). Second, in context, the assertion provides a motive and supports an inference that Cuellar deliberately and willfully killed Jaramillo, if not both victims.

{11}   Defendant argues that "[w]hile ... an admission to killing for hire increases the likely penalties a declarant could expect, it is equally plausible that Cuellar could have believed that killing at the behest or instruction of another somehow decreased his own culpability." We are not persuaded. The admission provides a factual basis for first degree willful and deliberate murder, *see.* § 30–2–1(A)(1), rather than the lesser included offenses of second degree murder, *see* § 30–2–1(B), and voluntary manslaughter, *see* NMSA 1978, § 30–2–3(A) (1994). Thus, "the degree of detail included in [Cuellar's] statement, including the identity of his co-conspirator[ ], would significantly aid law enforcement officials in securing criminal liability." *Torres,* 1998–NMSC–052, ¶ 17, 126 N.M. 477, 971 P.2d 1267.

{12}   Defendant urges us to take notice of gang culture in assessing whether Cuellar's statement was truly against his penal interest: "Within the twisted cultural framework of young gang members, such a statement is likely to be viewed as an opportunity to increase prestige, machismo, and 'respect.' " Defendant misapprehends the appropriate standard. The standard is not whether a gang member might have made such a declaration under similar circumstances; rather, the standard "is whether the statement is so far contrary to the declarant's penal interest that 'a reasonable person in the declarant's position would not have made the statement unless believing it to be true.' " *Torres,* 1998–NMSC–052, ¶ 14, 126 N.M. 477, 971 P.2d 1267 (quoting Rule 11–804(B)(3)). Our Court of Appeals has held that a reasonable person would understand the disserving nature of an incriminating statement, even if made to a friend. *See State v. Gutierrez,* 119 N.M. 658, 661, 894 P.2d 1014, 1017 (Ct.App.1995); *see also United States v. Mock,* 640 F.2d 629, 631–32 (5th

Cir. Unit B.Mar.1981) (declaration to a former wife); *United States v. Goins,* 593 F.2d 88, 90–91 (8th Cir.1979) (statement to a daughter); *United States v. Lang,* 589 F.2d 92, 97 (2d Cir.1978) (declaration to an undercover agent). A statement made by one gang member to another is not distinguishable.

{13} In *Torres,* we explained that "subjective beliefs are relevant in evaluating reliability and admissibility under Rule 11–804(B)(3)." 1998–NMSC–052, ¶ 18, 126 N.M. 477, 971 P.2d 1267 (citing 5 Weinstein & Berger, *supra,* § 804.06[4][d][i], at 804–53). We take this opportunity to clarify our statement in *Torres.* "Subjective beliefs" are relevant in evaluating reliability and admissibility under Rule 11–804(B)(3) only when the factual context itself suggests that the declarant generally did not understand the statement to be disserving or that the statement was made pursuant to self-interest or some other countervailing motive. *See* 4 Mueller & Kirkpatrick, *supra,* § 496, at 816–20; 5 Weinstein & Berger, *supra,* § 804.06[4][d][i], at 804–51 to 804–53.

{14} We were concerned in *Torres* that the declarant might have been motivated to fabricate his account of the facts, because he gave his statement to law enforcement personnel and because he might have been tempted to shift blame to the defendant. *See* 1998–NMSC–052, ¶¶ 17–18, 126 N.M. 477, 971 P.2d 1267. In the final analysis, however, we concluded that the circumstances suggested the declarant "believed that he was incriminating himself and [the defendant] equally." *Id.* We therefore held that the declarant's subjective beliefs did not affect the analysis. In this case, there is no suggestion that Cuellar made his statement pursuant to some improper motive, and there is no indication that Cuellar actually sought to manipulate or influence his fellow gang members with his declaration. Labadie's explanation that Cuellar was "bragging" about the killings indicates that he understood his statement's disserving nature. We conclude that the trial court did not err in admitting the statement.

## III.

{15} Defendant contends further that the admission of Cuellar's statement violated his state and federal rights to confrontation, due process, and a fair trial. In his briefs before this Court, however, Defendant only cites to authority supporting the argument that his confrontation rights were violated. Hence, we limit our discussion to these rights. *See Lee v. Lee (In re Adoption of Doe),* 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984). Defendant also "offers no persuasive reasons to suggest that the federal [standards] ... fail[ ] to protect an accused's right of confrontation under Article II, Section 14" of the New Mexico Constitution. *Torres,* 1998–NMSC–052, ¶ 26 n. 3, 126 N.M. 477, 971 P.2d 1267; *see also State v. Gomez,* 1997–NMSC–006, ¶¶ 19–21, 122 N.M. 777, 932 P.2d 1 (detailing our "interstitial approach" to questions of independent constitutional interpretation under the New Mexico Constitution). We therefore address only federal confrontation rights. *See* U.S. Const. amends. VI, XIV.

{16} " 'The issue of whether admission of hearsay evidence violates a defendant's rights under the Confrontation Clause is a question of law' subject to de novo review." *Torres,* 1998–NMSC–052, ¶ 20, 126 N.M. 477, 971 P.2d 1267 (quoting *State v. Ross,* 122 N.M. 15, 22, 919 P.2d 1080, 1087 (1996)). Under this standard, we conclude that the trial court did not violate Defendant's federal confrontation rights by allowing Cuellar's hearsay statement into evidence.

{17} The federal Confrontation Clause guarantees a criminal defendant the right "to be confronted with the witnesses against" him or her. U.S. Const. amend. VI. With respect to hearsay evidence, this guarantee generally imposes two evidentiary burdens upon the prosecution: First, "the prosecution must either produce, or demonstrate the unavailability of, the declarant"; and second, the prosecution must show that the "hearsay [is] marked with such trustworthiness that there is no material departure from the reason of the general rule." *Ohio v. Roberts,* 448 U.S. 56, 65, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) (internal quotation marks

omitted); *accord Torres*, 1998–NMSC–052, ¶¶ 20–22, 26, 126 N.M. 477, 971 P.2d 1267. Inasmuch as Defendant does not argue that Cuellar was available for confrontation purposes, we limit our review to the "trustworthiness" burden.

{18} In our constitutional analysis in *Torres*, we noted that the declarant in that case was on the witness stand and available for cross-examination at the time his statement was entered into evidence. *See* 1998–NMSC–052, ¶ 24, 126 N.M. 477, 971 P.2d 1267. Given this fact, we held that the "out-of-court statement did not infringe upon [the defendant's] right of confrontation under the . . . United States Constitution." *Id.* (citing *United States v. Owens*, 484 U.S. 554, 557–61, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988)). With this holding, our federal constitutional analysis ended. Without reaching the issue whether the New Mexico Confrontation Clause was necessarily satisfied on this same ground, *see id.* ¶ 25, we adopted Justice O'Connor's reasoning in *Williamson* and held that under the New Mexico Constitution, statements against penal interest function as per se exceptions to the general confrontation requirements. We reasoned that such statements are firmly rooted exceptions to the hearsay rule and therefore bear "adequate indicia of reliability." *See id.* ¶¶ 29–32 (citing *Williamson*, 512 U.S. at 605, 114 S.Ct. 2431 (O'Connor, J., plurality part of an otherwise majority opinion)). We acknowledge that *Torres* is distinguishable. Cuellar was not present at trial when his statement was admitted into evidence. In addition, we analyzed the Confrontation Clause issue in *Torres* under state constitutional law as well as under federal constitutional law, and we identified a different basis for affirming under state constitutional law than under federal constitutional law. Nevertheless, *Torres* is persuasive in resolving the federal Confrontation Clause issue in this case.

{19} In *White v. Illinois*, 502 U.S. 346, 356, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992), the United States Supreme Court held that "where proffered hearsay has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule, the Confrontation Clause is satisfied." It is im-portant to note that neither *White* nor *Williamson* considered the question whether a statement against penal interest qualifies as a firmly rooted exception to the hearsay rule. In our evidentiary analysis in *Torres*, however, we interpreted Rule 11–804(B)(3) consistently with its federal counterpart, and with the construction of its counterpart in *Williamson*. *See Torres*, 1998–NMSC–052, ¶¶ 14, 19, 126 N.M. 477, 971 P.2d 1267. We indicated that, notwithstanding the absence of United States Supreme Court precedent, a statement against penal interest was a firmly rooted hearsay exception for purposes of federal as well as state constitutional law. *See id.* ¶ 32 & n. 5. The facts of this case present that issue for resolution. We now hold that because Cuellar's declaration had "sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule, the [federal] Confrontation Clause is satisfied." *White*, 502 U.S. at 356, 112 S.Ct. 736.

{20} Citing *State v. Earnest*, 106 N.M. 411, 412, 744 P.2d 539, 540 (1987), Defendant argues that certain factors preclude a determination that the statement was sufficiently reliable for confrontation purposes. In *Torres*, however, we clearly explained that the *Earnest* "analysis is no longer necessary in order to ensure that declarations against interest admissible under Rule 11–804(B)(3) satisfy the [New Mexico] Confrontation Clause." *Torres*, 1998–NMSC–052, ¶ 28, 126 N.M. 477, 971 P.2d 1267. The against-interest element of Cuellar's declaration necessarily satisfied the "trustworthiness" burden imposed by the federal Confrontation Clause.

## IV.

{21} Defendant also maintains that the trial court erred in precluding counsel from cross-examining Gregory on the question of possible State bias. Specifically, he contends that the trial · court violated his state and federal rights to confrontation, due process, and a fair trial; however, Defendant only cites authority and presents argument supporting his contention that his federal confrontation rights were violated. Thus, we address only federal confrontation rights.

{22} Our Court of Appeals has determined that, "[w]hile the scope of cross-exami-

nation usually lies within the sound discretion of the district court, Confrontation Clause claims are issues of law that we review de novo." *State v. Martinez*, 1996–NMCA–109, ¶ 14, 122 N.M. 476, 927 P.2d 31. Nevertheless, we have previously acknowledged that " 'trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on … cross–examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.' " *State v. Meadors*, 121 N.M. 38, 49, 908 P.2d 731, 742 (1995) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)). We conclude, under the de novo standard, that the trial court acted within its "wide latitude."

{23}   Of all the cases Defendant cites to the contrary, *State v. Martinez* appears to be the closest on point. *Martinez* involved a police informant paid to buy drugs from an alleged illegal distributor, who was later arrested and charged with trafficking in a controlled substance. *See* 1996–NMCA–109, ¶¶ 3–7, 122 N.M. 476, 927 P.2d 31. While that case was pending, the police arrested the informant for an unrelated matter, and the State charged her with accessory to murder and aggravated battery. *See id.* ¶ 8. At the time of the distributor's trial, the charges against the informant had been dismissed without prejudice on venue grounds, and the prosecutor in the receiving venue had yet to take action. *See id.*

{24}   The district court forbade the distributor in his trial from inquiring into the informant's arrest. *See id.* On appeal, the distributor argued that the trial court violated his confrontation rights by precluding him from "inquir[ing] into the possibility that [the informant] was biased or motivated to fabricate testimony." *Id.* ¶ 9. Our Court of Appeals "agree[d] … that [the distributor] should have been permitted to inquire into any possibility that [the informant] was biased or motivated to fabricate testimony, even in the absence of evidence that a deal had been or could have been made exchanging her testimony for leniency." *Id.* ¶ 17. The determinative factor in the Court's anal-

ysis was that "[a] jury … should be able to take into consideration whether a witness *hoped* to curry favor by cooperating with the prosecution." *Id.*

{25}   Here, Defendant argues that Gregory's 1996 plea agreement and conviction may have given rise to State bias. He thus urges a past and final dealing with the State as the only ground for a potentially improper motive; yet, such a dealing altogether fails to raise a reasonable inference that Gregory would have rationally "hoped to curry favor by cooperating with the prosecution." Gregory's situation is thus unlike the witness's in *Martinez*, where there was a reasonable expectation of future and continuing dealing with the State as an adverse party. *See also State v. Baldizan*, 99 N.M. 106, 108, 654 P.2d 559, 561 (Ct.App.1982) (witness "as a parolee or a suspect"); *Davis v. Alaska*, 415 U.S. 308, 317–18, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (witness as a probationer and a possible suspect); *Giglio v. United States*, 405 U.S. 150, 154–55, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (witness having a potential "understanding or agreement as to a future prosecution").

{26}   We cannot conclude that the trial court erred in determining that Defendant's proposed area of inquiry was marginally relevant, *cf.* Rule 11–401 NMRA 1999, or that the trial court was incorrect in determining that the interrogation would have served to prejudice, confuse, or mislead the jury, *cf.* Rule 11–403 NMRA 1999. We also note that the trial court did allow defense counsel to bring out the fact that Gregory had been charged with and convicted of a felony. Thus, upon de novo review, we hold that the trial court acted reasonably and within its "wide latitude."

**V.**

{27}   In his final point of error, Defendant asserts that there was insufficient evidence to support his convictions for the homicides of Morgan and Jaramillo and thus that he has been denied due process. *See* N.M. Const. art. II, §§ 14 (as amended 1980), 18 (as amended 1972); U.S. Const. amends. V, XIV. In *State v. Garcia*, 114 N.M. 269, 274, 837 P.2d 862, 867 (1992), we

explained that "we perceive it to be an appellate court's duty on review of a criminal conviction to determine whether *any* rational jury could have found each element of the crime to be established beyond a reasonable doubt." Applying this standard to the evidence presented at trial, we conclude that there is substantial evidence supporting Defendant's murder convictions.

{28} The trial court instructed the jury on the elements of first degree willful and deliberate murder, *see* § 30–2–1(A)(1); UJI 14–201 NMRA 1999, second degree murder, *see* § 30–2–1(B); UJI 14–211 NMRA 1999, and accomplice liability, *see* NMSA 1978, § 30–1–13 (1972); UJI 14–2822 NMRA 1999. The State introduced sufficient evidence to support a finding on each element. Coupled with the physical evidence and eyewitness accounts produced at trial, Cuellar's declaration supports the theory that Cuellar killed Jaramillo in New Mexico on or about March 10, 1995 with the deliberate intention of taking away her life. The evidence introduced at trial also suggests that Jaramillo owed Defendant money for drugs, that Defendant had previously set out to have someone intentionally kill Jaramillo because she owed him drug money, and that Cuellar acted at Defendant's behest in killing Jaramillo at the time in question. In light of all this evidence, we conclude that, under the accomplice theory, a rational jury could have convicted Defendant for first degree willful and deliberate murder.

{29} As for the killing of Morgan, we determine that Cuellar's declaration, the physical evidence, and the eyewitness accounts together support the theory that Cuellar killed Morgan, that he knew he created a strong probability of death or great bodily harm to Morgan or another, that he did not act with sufficient provocation, and that the killing happened in New Mexico on or about March 10, 1995. The evidence introduced at trial also suggests that Defendant supplied Cuellar with the .25–caliber pistol used to kill Morgan and Jaramillo and that Defendant was with Cuellar, Morgan, and Jaramillo just hours before the killings. When considered together, the evidence raises a reasonable inference that Defendant intended the crime and encouraged Cuellar to commit it. We therefore conclude that, under the accomplice theory, a rational jury could have convicted Defendant for second degree murder.

## VI.

{30} As for the evidentiary and constitutional issues arising from the admission of Cuellar's statement, *see* Rule 11–804(B)(3), *Torres* is both controlling and persuasive. *Torres* controls the evidentiary analysis. The "subjective beliefs" discussed in that case are not relevant; the factual context in this case fails to suggest that Cuellar generally did not understand the statement to be disserving or that the statement was made pursuant to Cuellar's self-interest or some other countervailing motive. *Torres* is persuasive in our federal confrontation analysis, even though Cuellar was not present at trial. Relying upon the state constitutional analysis in *Torres*, we conclude that Rule 11–804(B)(3) is a firmly rooted hearsay exception for federal confrontation purposes and therefore that Cuellar's statement was admissible under the federal Constitution without an *Earnest* inquiry. As for the federal confrontation issue arising from the limitation on Defendant's cross-examination of Gregory, we acknowledge that Defendant's inquiry was relevant. We conclude, however, that the limitation was reasonable and within the trial court's "wide latitude," because the inquiry concerned Gregory's past and final dealing with the State and therefore tended to prejudice, confuse, or mislead the jury. We also hold that substantial evidence supports Defendant's murder convictions. Accordingly, we affirm.

{31} **IT IS SO ORDERED.**

BACA, FRANCHINI, and SERNA, JJ., concur.

### ORDER ON MOTION FOR REHEARING

{32} Defendant has filed a motion for rehearing, arguing that under *Lilly v. Virginia*, 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999) (plurality opinion), "[t]his Court's interpretation of the federal Confrontation Clause is ... directly at odds with that

of the United States Supreme Court." For the following reasons, we disagree. We are not persuaded that *Lilly* alters the result or the analysis in this case. "Rather than revise the [O]pinion, [however,] we have opted to respond in this separate published Order." *Teague–Strebeck Motors, Inc. v. Chrysler Ins. Co.*, 1999–NMCA–109, ¶ 76, 127 N.M. 603, 985 P.2d 1183.

{33} *Lilly* involved a prosecution for murder. *See* 119 S.Ct. at 1892. At trial, and over the defendant's objections, the prosecution offered into evidence a co-conspirator's confession to police, where the co-conspirator "admitted that he stole liquor during [an] initial burglary and that he stole a 12–pack of beer during [a] robbery of [a] liquor store"; however, the co-conspirator also "maintained that [the defendant] masterminded the robberies and was the one who had killed [the murder victim]." *Id.* Virginia state courts upheld the admissibility of the confession as a statement against penal interest and as a firmly rooted hearsay exception for federal confrontation purposes. *See id.* at 1893. A plurality of the United States Supreme Court disagreed with the federal confrontation holding: "The decisive fact, which we make explicit today, is that accomplices' confessions that inculpate a criminal defendant are not within a firmly rooted exception to the hearsay rule as that concept has been defined in our Confrontation Clause jurisprudence." *Id.* at 1899.

{34} We note first that on its facts, *Lilly* is distinguishable. The co-conspirator in *Lilly* gave his confession to law-enforcement personnel after he was apprehended by police, brought into custody, advised of his rights, *and* faced with interrogation. *See id.* at 1892, 1901. In contrast, the record indicates that Cuellar made his statement to an acquaintance in casual conversation. There is no indication that Cuellar did not understand his statement to be disserving or that Cuellar made his statement pursuant to self-interest or some other countervailing motive. In addition, while the co-conspirator in *Lilly* asserted that the defendant had killed the murder victim, Cuellar unequivocally bragged that he had killed Morgan and Jar-

amillo *himself*. Thus, Cuellar did not shift blame from himself to Gonzales.

{35} We also note that in *Lilly*, the plurality reiterated the following two-pronged test for determining whether the prosecution has satisfied the "trustworthiness" burden imposed by *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980): "(1) 'the evidence falls within a firmly rooted hearsay exception' or (2) it contains 'particularized guarantees of trustworthiness' such that adversarial testing would be expected to add little, if anything, to the statements' reliability." *Lilly*, 119 S.Ct. at 1894 (quoting *Roberts*, 448 U.S. at 66, 100 S.Ct. 2531). We address each prong briefly.

█ {36} As for Rule 11–804(B)(3) NMRA 1999 constituting a firmly rooted hearsay exception, *Lilly* does not preclude this possibility. *Compare Lilly*, 119 S.Ct. at 1899 & n. 5 (plurality opinion of Stevens, J., joined by Souter, Ginsburg, and Breyer, J.J.) (limiting the holding to situations where an accomplice incriminates a criminal defendant), *with id.* at 1903 (Breyer, J., concurring) ("writ[ing] separately to point out that the fact that [the Court] do[es] not reevaluate the link [between the Confrontation Clause and the hearsay rule] in this case does not end the matter," and noting that the plurality's holding "may leave the question open for another day"), *and id.* at 1904 (Rehnquist, C.J., joined by O'Connor and Kennedy, J.J., concurring in the judgment) ("This case ... does not raise the question whether the Confrontation Clause permits the admission of a genuinely self-inculpatory statement that also inculpates a codefendant...."). Insofar as a declaration truly implicates penal interests—unlike the confession in *Lilly*, which entirely shifted the blame for murder—the history behind the statement-against-interest exception justifies the conclusion that the against-interest element of the declaration necessarily satisfies the "trustworthiness" burden imposed by the federal Confrontation Clause. *See Lilly*, 119 S.Ct. at 1897 (plurality opinion) ("[W]e have over the years 'spoken with one voice in declaring presumptively unreliable accomplices' *confessions that incriminate defendants*.'" (emphasis added) (quoting *Lee v.*

*Illinois,* 476 U.S. 530, 541, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986))). Such a conclusion is warranted here.

{37} With respect to the "particularized guarantees of trustworthiness" prong, the co-conspirator's confession in *Lilly* would have failed to qualify as a statement against penal interest in New Mexico under Rule 11–804(B)(3), because the confession in that case did not inculpate the declarant as to the murder. *See State v. Torres,* 1998–NMSC–052, ¶ 14, 126 N.M. 477, 971 P.2d 1267 ("We agree with the United States Supreme Court that the reliability of declarations against interest is best secured by a statement-by-statement analysis of the declarant's narrative." (citing *Williamson v. United States,* 512 U.S. 594, 600–03, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994))). Therefore, unlike the Virginia courts in *Lilly,* we would not have reached the confrontation analysis; we would have determined that the confession was inadmissible under our Rule 11–804(B)(3).

■ {38} In *State v. Torres,* we explained that we had previously relied on four factors in determining whether an accomplice's statement satisfied the "particularized guarantees of trustworthiness" prong of the federal confrontation test. *See* 1998–NMSC–052, ¶ 28, 126 N.M. 477, 971 P.2d 1267 (citing *State v. Earnest,* 106 N.M. 411, 412, 744 P.2d 539, 540 (1987)). The four factors are: "(1) the absence of any offer of leniency for the declarant's statement; (2) the statement was against the declarant's penal interest; (3) the statement did not attempt to shift responsibility away from the declarant; and (4) the statement was corroborated by independent evidence." *Id.* We also explained:

> In evaluating whether a declarant's statements satisfy Rule 11–804(B)(3) ..., the trial court should examine the statement in light of all surrounding circumstances, including to whom the statement was made, whether the declarant attempted to curry favor with authorities, and whether the statement is collateral to the declarant's criminal liability or exculpatory of the declarant.

*Id.* ¶ 29 (citations omitted).

■ {39} In view of the similarity between the *Earnest* factors and the Rule 11–

804(B)(3) factors, we asserted in *Torres* that "[w]ith the exception of the final factor articulated in *Earnest,* ... the *Earnest* analysis has been subsumed within our interpretation of Rule 11–804(B)(3)." *Id.* (footnote omitted). We also noted that "[t]he United States Supreme Court has clarified that the Confrontation Clause requires that statements be inherently trustworthy and that independent corroborative evidence [i.e., the final *Earnest* factor] is irrelevant to such an inquiry." *Id.* ¶ 29 n. 4. Interestingly, the *Lilly* plurality made this latter point explicit: "We have squarely rejected the notion that 'evidence corroborating the truth of a hearsay statement may properly support a finding that the statement bears "particularized guarantees of trustworthiness." ' " *Lilly,* 119 S.Ct. at 1900 (quoting *Idaho v. Wright,* 497 U.S. 805, 822, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990)). We conclude that the "particularized guarantees of trustworthiness" imposed by the federal Confrontation Clause are inherently and necessarily a part of the statement-against-interest analysis under our Rule 11–804(B)(3). Cuellar did not give a police confession or other statement tainted with self-interest or some other countervailing motive; Cuellar did not attempt to shift blame or curry favor with authorities. The against-interest element of Cuellar's declaration necessarily satisfied the "trustworthiness" burden imposed by the federal Confrontation Clause.

{40} In light of the discussion above, we hold that *Lilly* does not alter the result or the analysis in our Opinion filed August 4, 1999. We therefore deny Defendant's motion for rehearing.

{41} **IT IS SO ORDERED.**

BACA, FRANCHINI, and SERNA, JJ., concur.