This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                          **Nos. 28,341 & 28,342**
                                                               (consolidated)

**JAMIE GALLEGOS and**
**ARLENE PANIAGUA,**

Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John A. Dean, District Judge**

Gary K. King, Attorney General
Andrea Sassa, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Susan Roth, Assistant Appellate Defender
Santa Fe, NM

for Appellants

### MEMORANDUM OPINION

**VIGIL, Judge.**

Defendants appeal their convictions for receiving stolen property (over $100) and contributing to the delinquency of a minor. Defendants argue that (1) the district court improperly limited the cross-examination of two witnesses; (2) they were denied due process and a fair trial by the admission of prior bad act evidence; (3) the evidence was insufficient to support their convictions; and (4) they received ineffective assistance of counsel. We disagree and affirm Defendants' convictions.

**BACKGROUND**

Defendant Gallegos is the mother of Child, who was nine years old when the underlying conduct occurred. Defendant Paniagua is Child's maternal grandmother. Defendant Gallegos was laid off of work in the spring of 2006. She had full custody of Child at that time, but she decided to give Child's paternal grandparents, Angel (Grandfather) and Rebecca Duran, temporary power of attorney until she was more established. Defendant Gallegos also agreed to have Child spend part of the summer with her father in Las Vegas, Nevada.

By July 2006, just a few months after sending Child to her paternal grandparents' home, Defendant Gallegos got an apartment and wanted Child to live with her again. However, Child's father began a legal custody proceeding. Child continued to reside with her paternal grandparents, with Defendant Gallegos seeing

Child on a visitation schedule. Child testified that it was during this period that Defendants encouraged her to misbehave, escalating to the point where she was told to steal money from her grandparents. We detail this evidence in our discussion below of the issues raised on appeal. Generally, the State's theory was that Defendants wanted Child's behavior to provoke the grandparents into removing Child from their home and returning custody to Defendant Gallegos. Defendants took the position that Grandfather used fear to force Child to fabricate her story. The jury agreed with the State's version and convicted Defendants of contributing to the delinquency of a minor and receiving stolen property.

**DISCUSSION**

**1.     Cross-Examination**

Defendants claim that the district court erred in limiting the cross-examination of Child and Grandfather, thereby preventing them from presenting their defense that Grandfather had manipulated Child to lie about the stealing. As a result, Defendants contend that they were deprived of their right of confrontation and due process.

A district court may limit cross-examination. *See State v. Sanders*, 117 N.M. 452, 459, 872 P.2d 870, 877 (1994) ("The Confrontation Clause merely guarantees an opportunity for effective cross-examination; it does not guarantee that the defense

3

may cross-examine a witness 'in whatever way, and to whatever extent, the defense might wish.'" (per curiam) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)). A defendant's right of confrontation is not violated when the district court restricts cross-examination to the facts and circumstances implicated by direct examination and to matters relating to the credibility of the witness. *State v. Smith*, 2001-NMSC-004, ¶ 23, 130 N.M. 117, 19 P.3d 254; *see also* Rule 11-611(B) NMRA; *State v. Delgado*, 112 N.M. 335, 341, 815 P.2d 631, 637 (Ct. App. 1991). Although we defer to the district court's discretion in limiting cross-examination, we review de novo the question of whether the Confrontation Clause has been violated. *See State v. Gonzales*, 1999-NMSC-033, ¶ 22, 128 N.M. 44, 989 P.2d 419.

The State argues that Defendants failed to preserve this issue. Whether preserved or not, the record shows no abuse of discretion nor does it support a violation of the Confrontation Clause. A review of the transcript indicates that Defendants were provided an adequate opportunity to cross-examine Child and Grandfather with respect to their defense theory that the charges were based on Grandfather's motive to lie and manipulation of Child. Specifically, the transcript demonstrates that defense questioning was properly limited based on relevancy or

redundancy and that any limitation did not rise to the level of constitutional concern. *See generally* Rule 11-401 NMRA (defining relevancy).

Defendants refer us to several specific portions of cross-examination that they claim either individually or cumulatively establish error. First, during cross-examination of Child, Defendants were not allowed to question her about a Mother's Day gift that Child had made for Defendant Gallegos; they wanted to show that the Durans never gave Defendant Gallegos the gift. However, irrespective of which version of events the jury might believe—that Defendants were guilty or that Grandfather manipulated Child into lying—the jury was well aware of the animosity that existed between the Durans and Defendants, including the custody dispute. Thus, the district court properly determined that the testimony concerning the gift was not relevant to the jury's assessment of Child's credibility. Further, it is speculation to conclude that an examination of the Mother's Day incident would have been helpful to Defendants, as opposed to harmful. *See In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 10, 121 N.M. 562, 915 P.2d 318 ("An assertion of prejudice is not a showing of prejudice.").

Defendants' second example of alleged error concerns questioning of Child about the night before the preliminary hearing. Defense counsel asked Child if she remembered Grandfather spanking her that night. The prosecutor objected on

relevance grounds. Although the discussion of this objection is almost completely inaudible, it appears that defense counsel stated that he was trying to show that the spanking gave Child a motive to lie. The questioning on the spanking ended after the bench conference. However, the jury was made aware of the spanking incident: Grandfather admitted it in his testimony while being cross-examined by defense counsel. Defense counsel used this incident to argue in closing that this created a motive for Child to lie. As a result, we believe that Defendants were given an adequate opportunity to present the spanking episode and how it related to their theory that the spanking motivated Child to lie.

Defendants next refer us to the questioning of Child concerning an incident where Grandfather became upset and broke or tore her stuffed animal. Child testified that the incident occurred. The prosecutor then objected and the district court sustained the objection. Although the judge advised defense counsel to lay a proper foundation, counsel did not do so and moved into a different line of questioning. Again, it appears that the district court was simply attempting to prevent this from turning into a dispute over parenting and custody. The basic facts of the incident were presented to the jury by Child's testimony and Grandfather's testimony, and defense counsel used this incident to argue in closing that Child had a motive to lie. We

therefore conclude that the district court did not improperly limit Child's cross-examination.

Defendants' argument with respect to the cross-examination of Grandfather leads to the same conclusion. Defense counsel was able to ask Grandfather whether the stuffed animal incident was related to Child's testimony, and Grandfather denied that it was. With respect to the spanking incident, defense counsel asked Grandfather whether it was related to the preliminary hearing, and he responded that he spanked Child because she had wet the bed.

We are not persuaded by Defendants' reliance on Rule 11-611(B), which permits cross-examination on specific instances of conduct. As noted, defense counsel was able to get both Child and Grandfather to agree that the incidents occurred, and the motive to lie defense was presented to the jury. Although Defendants claim that it was necessary to more fully explore these incidents, there is no indication that this would have been helpful to the defense. More to the point, instead of further exploring these incidents to inferentially show that Child was intimidated—a speculative endeavor—defense counsel could have simply asked Child if she was testifying under duress. Because the basic facts of these incidents were presented to the jury and the motive to lie argument was made based on these basic facts, we conclude that the district court did not abuse its discretion, and Defendants were not denied their confrontation and due process rights.

7

## 2.    Prior Bad Act Evidence

Defendants next issue is stated as follows: "[Grandfather]'s outburst about uncharged allegations of abuse of [Child] by [Defendant] Gallegos was fundamentally unfair and denied [Defendants] due process." Defendants' argument is based on Grandfather's response to the defense counsel's question about why Grandfather spanked Child. Grandfather answered, "[b]ecause at ten years old she was still peeing the bed because somebody couldn't raise her right. She was beaten and burned and tortured." However, a reference to Grandfather's testimony does not necessarily show that he was referring to prior bad acts committed by Defendant Gallegos.

The reference to not being "raised right" is not a specific bad act subject to exclusion under Rule 11-404(B) NMRA. The obvious concern is the reference to Child being "beaten and burned and tortured." We agree with Defendants that this would be highly prejudicial if Grandfather had specifically referred to Defendant Gallegos. *See State v. Aguayo*, 114 N.M. 124, 130, 835 P.2d 840, 846 (Ct. App. 1992) (noting the highly prejudicial nature of evidence of uncharged misconduct). However, in this case it is too speculative to say who Grandfather was referring to. *See State v. Jett*, 111 N.M. 309, 312, 805 P.2d 78, 81 (1991) ("An evidentiary ruling within the discretion of the court will constitute reversible error only upon a showing of an abuse of discretion and a demonstration that the error was prejudicial rather than

8

harmless[.]" (citation omitted)). Therefore, we conclude that Defendants have not established error, even if we assume that the objection had been properly preserved, which it was not.

**3.       Sufficiency of the Evidence**

Defendants challenge the sufficiency of the evidence to support their convictions. We engage in a two-step analysis in evaluating a sufficiency challenge to a conviction. First, we "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. Second, we "make a legal determination of whether the evidence viewed in this manner could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt." *State v. Apodaca*, 118 N.M. 762, 766, 887 P.2d 756, 760 (1994) (internal quotation marks and citation omitted). "The reviewing court does not weigh the evidence or substitute its judgment for that of the fact finder as long as there is sufficient evidence to support the verdict." *State v. Mora*, 1997-NMSC-060, ¶ 27, 124 N.M. 346, 950 P.2d 789.

In considering Defendants' sufficiency challenge, we look to the jury instructions. *See State v. Smith*, 104 N.M. 729, 730, 726 P.2d 883, 884 (Ct. App. 1986) ("Jury instructions become the law of the case against which the sufficiency of

the evidence is to be measured."). In order to support their convictions for receiving stolen property (over $100), the jury instructions required the jury to find that Defendants acquired possession of and/or kept cash and/or jewelry that had been stolen by another, that they knew or believed that this property had been stolen, and that the property had a market value over $100. Further, in order to find Defendants guilty of contributing to the delinquency of a minor, the evidence had to show that Defendants, by their actions and/or words, encouraged Child to take jewelry and/or cash from the Duran residence and that this caused Child to commit the offense of larceny.

Child testified that both Defendants told her to search the Duran residence for money and to take some if she found any. Child gave the money to Defendant Gallegos while Defendant Paniagua was present. *Cf. State v. Hoeffel*, 112 N.M. 358, 361, 815 P.2d 654, 657 (Ct. App. 1991) ("Intent can be proved by circumstantial evidence."). Child further testified that she took money from the Duran residence on six or seven occasions. She also stole two rings and a necklace. Her testimony indicates that she gave the jewelry to both Defendants. Child was told that the goal of her misbehavior was to cause the Durans to send her back to Defendant Gallegos.

Grandfather testified that Child's behavior changed dramatically during the time in question, including plummeting school grades and emotional fits. He also

testified that he kept over $5000 cash from his private business in the night stand next to his bed. When he first noticed that money was missing, it amounted to $2200, eventually growing to approximately $4000. He then began setting up Child by leaving his wallet out when he was showering, and the amount of missing money grew to $4880. He also estimated that $5000 worth of jewelry had been stolen. Child was confronted and confessed to Grandfather that she had taken the cash and jewelry. She wrote down a confession that was admitted as Exhibit 1. Child's therapist also testified that she confessed to him.

In light of this testimony, we conclude that the evidence was sufficient to support Defendants' convictions. *See State v. Roybal*, 115 N.M. 27, 30, 846 P.2d 333, 336 (Ct. App. 1992) (observing that the fact finder resolves witness credibility). Although Defendants denied these allegations in their testimony, the jury was free to reject their version of events. *See State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988).

**4.      Ineffective Assistance of Counsel**

Defendants contend that they received ineffective assistance of counsel. "When an ineffective assistance claim is first raised on direct appeal, we evaluate the facts that are part of the record. If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas

corpus petition, although an appellate court may remand a case for an evidentiary hearing if the defendant makes a prima facie case of ineffective assistance." *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61 (citing *State v. Swavola*, 114 N.M. 472, 475, 840 P.2d 1238, 1241 (Ct. App. 1992)). "To establish a prima facie case of ineffective assistance of counsel, Defendant must show that (1) counsel's performance was deficient in that it 'fell below an objective standard of reasonableness'; and (2) that Defendant suffered prejudice in that there is 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Aker*, 2005-NMCA-063, ¶ 34, 137 N.M. 561, 113 P.3d 384 (quoting *Lytle v. Jordan*, 2001-NMSC-016, ¶¶ 26-27, 130 N.M. 198, 22 P.3d 666).

"If any claimed error can be justified as a trial tactic or strategy, then the error will not be unreasonable." *State v. Bernal*, 2006-NMSC-050, ¶ 32, 140 N.M. 644, 146 P.3d 289; *see also Lytle*, 2001-NMSC-016, ¶ 43 ("On appeal, we will not second guess the trial strategy and tactics of the defense counsel." (internal quotation marks and citation omitted)). "'A claim of ineffective assistance of counsel does not present an opportunity for hindsight review[,]'" however; we look at the totality of the evidence regarding representation, not just whether the strategy was successful. *State v. Reyes*, 2002-NMSC-024, ¶ 46, 132 N.M. 576, 52 P.3d 948 (quoting *Lytle*, 2001-

NMSC-016, ¶ 50). With these principles in mind, we consider the following ineffective assistance claims raised by Defendants.

First, Defendants claim that counsel was ineffective for failing to move for a mistrial or ask for a curative instruction after Grandfather's outburst about uncharged acts. As discussed above, the referenced comment was too ambiguous to warrant corrective action. Given the ambiguity, it would make tactical sense not to object to it, to prevent the impression that it was a reference to Defendant Gallegos's past conduct or to otherwise focus the jury's attention on the comment. *See Swavola*, 114 N.M. at 475, 840 P.2d at 1241 (noting that "acquiescence to the introduction of inadmissible evidence may sometimes be tactically advantageous"). In addition, as set forth in our analysis above, it is too speculative to say that Defendants were prejudiced.

Defendants second claim of ineffective assistance of counsel concerns the possible failure to preserve the individual challenges to the limitation on cross-examination. Because we have presumed that these challenges were preserved, and no error occurred, Defendants have not made the requisite showing of prejudice.

**CONCLUSION**

For the reasons set forth above, we affirm.

**IT IS SO ORDERED.**

13

                                                          **MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____

**CELIA FOY CASTILLO, Judge**

_____

**LINDA M. VANZI, Judge**

14