2004-NMCA-117

98 P.3d 1054

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Oscar DUARTE, Defendant–Appellant.**

**No. 23,310.**

Court of Appeals of New Mexico.

Aug. 2, 2004.

Patricia A. Madrid, Attorney General, James O. Bell, Assistant Attorney General, Santa Fe, NM, for Appellee.

Jack Bennett Jacks, Law Office of J.B. Jacks, Albuquerque, NM, for Appellant.

## OPINION

BUSTAMANTE, Judge.

{1} The issue in this case is whether an out-of-court statement made by Defendant's accomplice, implicating Defendant, was admissible when the accomplice did not testify and was not subjected to cross-examination. In the statement, the accomplice admitted attempting to sell marijuana to an undercover police officer, but claimed that Defendant had given him directions about how to complete the sale. We take this opportunity to consider the impact of the Supreme Court's recent opinion in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) on New Mexico law. We hold that *Crawford* should be applied in New Mexico, and that under *Crawford* the statement was inadmissible. We also hold that, even under New Mexico case law preceding *Crawford*, the statement was not sufficiently reliable under the analysis in *State v. Torres*, 1998–NMSC–052, ¶¶ 9–19, 126 N.M. 477, 971 P.2d 1267, to warrant admission. We reverse and remand for a new trial.

**BACKGROUND**

{2} A narcotics officer testified that he received information from a confidential source that Jorge Duarte–Munoz [Duarte–Munoz], age seventeen, was trafficking large amounts of marijuana. The officer posed as a large marijuana buyer, contacted Duarte–Munoz, and arranged to meet to buy thirty pounds of marijuana. On the afternoon of the deal, a police surveillance team was placed on Duarte–Munoz while he was at a restaurant, and when Duarte–Munoz left, the detectives followed him to a house on Second Street in Albuquerque. Duarte–Munoz then drove to an address on Wallace Street, and then drove to meet the undercover officer at an Albertson's parking lot. Duarte–Munoz placed the marijuana in the officer's trunk and then took the money from the trunk. The officer ordered him to stop, announcing that he was

a police officer, and Duarte–Munoz jumped in his truck and tried to escape. He backed into one or more police cars, causing damage. He was apprehended when he ran a stop light and crashed into another officer's vehicle about one block away.

{3} Detective Robert Dilly testified about Duarte–Munoz's frame of mind after he was arrested:

I went back to my car and the whole time [Duarte–Munoz], he was all excited. He didn't want to get arrested. I got a little baby girl. I've got a girlfriend. I don't want to go to jail. Calm down. Calm down. Everything is all right. [sic] Nobody got killed. It sounds like all the detectives are all right. [sic] Calm down. Apologetic for causing the accident with the police vehicle.

So at this time realizing that he was worried about what had happened, I knew that he was going to, once he calmed down, that he would be able to cooperate, give me an interview because he was almost like crying out for help. He was worried, then he didn't want to go to jail, also.

Duarte–Munoz "was very excited, worried about going to jail, bobbing up and down, bobbing on the seat, had that scared look in his eyes. He was sweating, really stressed about the whole situation." When they arrived back at the Albertson's parking lot, Duarte–Munoz "kept talking about his little baby girl and he didn't want to throw his life away." He said, "I can't go to jail. I have a baby girl. And [Dilly] was trying to get him to calm down." Dilly advised him of his rights.

{4} Over objection, Dilly was allowed to testify that Duarte–Munoz told him how he had made arrangements to sell the marijuana, and had gone to the house on Second Street, but there was not enough marijuana there to complete the deal. Duarte–Munoz then implicated his father (Defendant) and his uncle, saying that Defendant and his uncle told him to go to the stash house on Wallace Street. A stash house is a residence used to break up large quantities of imported drugs before they are distributed locally or transported elsewhere.

{5} Dilly also testified that when he attempted to obtain more information, Duarte–Munoz told him there was more marijuana at the Wallace Street house, directed Dilly there, and explained where the marijuana was hidden. Duarte–Munoz said two people were there, watching the marijuana for Defendant. According to Dilly, "he was really good, as good as a paid informant."

{6} At one point, the prosecutor asked Dilly if Duarte–Munoz was a paid informant, or if Dilly had made any deal with him. Dilly answered:

No, he was providing information with the hope of having charges later on down the line dropped. He—like I said, he was concerned about going to prison and not seeing his daughter. I told him, okay, what's going to happen and I say this routinely with everybody that ends up going to jail, calling later, well, I'm not going to make any promises. You go to jail today, when you get out of jail you can contact us or your attorney can contact us. We'll make an agreement with the district attorney's office if that's what he wanted to do.

{7} Dilly, along with other officers, went to the address on Wallace Street. Dilly testified the odor of fresh marijuana was "very, very strong." Defendant was at the house along with two other men. Approximately 500 pounds of marijuana, with a wholesale value of about $250,000, were recovered from a space beneath the floor. Its retail value would have been higher. One of the officers testified that, when the marijuana was discovered, Defendant punched him and tried to leave. After Defendant was subdued, Defendant vomited and began slamming his head against the floor.

{8} The jury convicted Defendant of possession of marijuana with intent to distribute, conspiracy, and possession of drug paraphernalia.

## DISCUSSION

### 1. Standard of Review

{9} The court ruled that Duarte–Munoz's statement, including the statement that Defendant directed Duarte–Munoz to the stash house, was admissible as a statement against penal interest under Rule 11–804(B)(3) NMRA. We review the admission of a state-

ment against penal interest by considering whether, in light of all the surrounding circumstances, it was an abuse of discretion to admit the statement. *See Torres*, 1998–NMSC–052, ¶15, 126 N.M. 477, 971 P.2d 1267.

## 2. *Crawford v. Washington*

■ {10} In *Crawford*, the Supreme Court held that a testimonial statement made by an accomplice to police was inadmissible under the Confrontation Clause to the Sixth Amendment unless the accomplice was unavailable and the defendant had a prior opportunity to cross-examine the accomplice concerning the statement, regardless of whether the statement was against the accomplice's penal interest. *See Crawford*, 124 S.Ct. at 1365. *Crawford* represents a significant break from prior law, reflected by *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), which held that the admission of an out-of-court statement does not violate the Confrontation Clause, as long as it falls within a "firmly rooted hearsay exception" or bears "particularized guarantees of trustworthiness." *Id. Crawford* overrules *Ohio* and holds that out-of-court testimonial statements, which include statements given to police, violates the Confrontation Clause unless the defendant has had a prior opportunity for cross-examination. *Crawford*, 124 S.Ct. at 1363.

■ {11} Our law, including New Mexico Supreme Court case law, has relied on *Ohio*. *See, e.g., State v. Martinez–Rodriguez*, 2001–NMSC–029, ¶26, 131 N.M. 47, 33 P.3d 267; *State v. Sanchez*, 112 N.M. 59, 63–65, 811 P.2d 92, 96–98 (Ct.App.1991). We recognize that we are limited in our ability to overrule precedent of our Supreme Court. *See Alexander v. Delgado*, 84 N.M. 717, 718, 507 P.2d 778, 779 (1973). However, we are given more latitude when the precise issue has not been already decided by our Supreme Court. *See State v. Parish*, 118 N.M. 39, 47, 878 P.2d 988, 996 (1994); *State v. Wilson*, 116 N.M. 793, 795–96, 867 P.2d 1175, 1177–78 (1994).

{12} Our Supreme Court has not yet had the opportunity to address *Crawford*, but we believe that we may decide its applicability without violating *Alexander*. Because *Crawford* interprets the federal constitution in a way that grants broader rights to criminal defendants, we believe we are bound to follow it. *See Kilpatrick v. State*, 103 N.M. 52, 53, 702 P.2d 997, 998 (1985) (stating that the State may grant broader rights under its own constitution than federal law, but may not restrict those rights to something less than those guaranteed under federal law). For this reason, we are confident that our Supreme Court would adopt *Crawford*, and we accept this opportunity to adopt *Crawford* in New Mexico.

■ {13} Crawford is directly on point, and we need not engage in a lengthy discussion of its analysis or rationale. Under *Crawford*, even if Duarte–Munoz's entire statement is characterized as a statement against penal interest, it is inadmissible because he was not subjected to cross examination. *See Crawford*, 124 S.Ct. at 1357.

## 3. *State v. Torres*

■ {14} Even without adopting *Crawford*, our conclusion that the statement is inadmissible would remain the same. A statement is against penal interest when it is so far contrary to the declarant's penal interest that "a reasonable person in the declarant's position would not have made the statement [without] believing it to be true." *See Torres*, 1998–NMSC–052, ¶14, 126 N.M. 477, 971 P.2d 1267 (internal quotation marks omitted). The rationale underlying Rule 11–804(B)(3) is that a statement asserting a fact distinctly against one's interest is unlikely to be false, and is therefore admissible even without oath and cross-examination. *See State v. Gonzales*, 1999–NMSC–033, ¶9, 128 N.M. 44, 989 P.2d 419. In determining whether a statement is against penal interest, we consider whether the statement is offered in exchange for leniency, and whether it shifts blame to another. *See Sanchez*, 112 N.M. at 65, 811 P.2d at 98. When a narrative is being considered, *Torres* requires a statement-by-statement consideration of each statement to determine whether it is admissible. *Torres*, 1998–NMSC–052, ¶14, 126 N.M. 477, 971 P.2d 1267; *Martinez–Rodriguez*, 2001–NMSC–029, ¶24, 131 N.M. 47, 33 P.3d 267. However, necessary context can be provided if it is necessary.

*See Torres,* 1998–NMSC–052, ¶ 14, 126 N.M. 477, 971 P.2d 1267.

{15} When a statement is given to authorities to curry favor, or motivated by a hope for leniency, it is not necessarily against penal interest. *See State v. Gutierrez,* 119 N.M. 658, 661, 894 P.2d 1014, 1017 (Ct.App. 1995); *State v. Huerta,* 104 N.M. 340, 343, 721 P.2d 408, 411 (Ct.App.1986). The declarant's "subjective beliefs" are relevant when the statement was made pursuant to self-interest or some other countervailing motive. *See Gonzales,* 1999–NMSC–033, ¶ 13, 128 N.M. 44, 989 P.2d 419.

{16} Here, the State contends, and the district court accepted, that the statement was admissible because it was against penal interest. We agree that Duarte–Munoz's admission that he attempted to sell thirty pounds of marijuana is against penal interest, but we must perform an analysis of each statement. *Torres,* 1998–NMSC–052, ¶ 14, 126 N.M. 477, 971 P.2d 1267.

{17} We do not see the discrete statement that Duarte–Munoz obtained guidance from Defendant as being against interest. At the time he told police that Defendant gave him directions on how to complete the sale, Duarte–Munoz, a seventeen-year-old, had just damaged several police cars trying to escape and had been arrested in a drug bust. He was under significant stress and repeatedly expressed his fear of going to jail because he was concerned for his young daughter. Detective Dilly testified that he was "crying out for help," and "was providing information with the hope of having charges later on down the line dropped." Even the prosecutor, during closing argument, explained to the jury that Duarte–Munoz decided to give up his father out of his own self-interest: "Well, it turned out [Duarte–Munoz] is a little selfish like everyone is. He's a little selfish. He does not want to go to jail, so he blurts it all out, I don't want to go to jail. My daughter, my this, my that, I don't want to go to jail." The evidence supports the conclusion that Duarte–Munoz's motivation for providing information that he was proceeding at Defendant's direction was made to curry favor with the police, and with the belief or hope that the information might lessen his culpability.

{18} Against strong evidence supporting this conclusion, there is very little countervailing evidence that Duarte–Munoz's statement was necessarily against his penal interest. In reality, Duarte–Munoz's admission that he sold the drugs provided no new information, since the police had already caught Duarte–Munoz trying to sell the drugs to them in an undercover sting. Under the circumstances, Duarte–Munoz's admission of his own guilt is not compelling. *See State v. Toney,* 2002–NMSC–003, ¶ 10, 131 N.M. 558, 40 P.3d 1002 (contrasting statements in which, " 'as is common in police-station confessions, the declarant admits only what the [police] are already capable of proving against him [or her] and seeks to shift the principal blame to another' ") (quoting *United States v. Shea,* 211 F.3d 658, 669 (1st Cir.2000)). Duarte–Munoz had just been caught red-handed, and admitted only what the police could already easily prove. His additional remark describing Defendant's purported role was not self-inculpatory. Rather, it was the kind of classic blame shifting that occurs once the "jig" is up. *See Lilly v. Virginia,* 527 U.S. 116, 131, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999) (recognizing that accomplice's confessions that incriminate defendants are "presumptively unreliable"). Under these circumstances, Duarte–Munoz's incrimination of Defendant is not against his own penal interest because the evidence strongly demonstrates an attempt to curry favor and lessen his own culpability. *See Gutierrez,* 119 N.M. at 661, 894 P.2d at 1017.

{19} *Gonzales,* 1999–NMSC–033, ¶¶ 10–11, 128 N.M. 44, 989 P.2d 419, is arguably contrary to our conclusion. It holds that the declarant's statement that the defendant had paid him to do the killings, so that the killing was at the behest of another, was sufficiently against penal interest to warrant its admission. Therefore, it can be read as announcing a rule that an accomplice's statement that the crime was committed at the behest of another is against penal interest. But *Gonzales* does not govern the outcome here, and illustrates how all of the surrounding circumstances must be considered in determining whether a statement is against penal interest.

{20} In *Gonzales*, the declarant's statement to an acquaintance that the defendant paid an accomplice for the killings subjected the accomplice to first degree murder, supplied a motive for the killings, and subjected the accomplice to additional charges, including conspiracy to commit first degree murder. *See id.* ¶ 3. In contrast, in the current case, the statement was made to a police officer. We have recognized that statements acknowledging criminal activity made to friends and acquaintances is more likely to be sufficiently trustworthy than statements made to authorities, which are more likely to be motivated by a desire to curry favor. *See Gutierrez*, 119 N.M. at 661, 894 P.2d at 1017. We also find the accomplice's bragging to an acquaintance in *Gonzales* to be distinguishable from the energetic attempt to curry favor with the authorities that we have in this case.

{21} *Torres* permits the admission of context when the context is necessary to show that the statement was self-inculpatory. *Torres*, 1998–NMSC–052, ¶ 14, 126 N.M. 477, 971 P.2d 1267. We do not think that the part of the statement blaming Defendant provides necessary context to understand Duarte–Munoz's statement that he sold thirty pounds of marijuana. Duarte–Munoz's statement that he sold thirty pounds of marijuana is clear on its own. The added remark that he did so at Defendant's direction is not necessary to explain why his admission was self-inculpatory.

{22} Consequently, even under the guidelines existing prior to *Crawford*, Duarte–Munoz's attempt to shift blame to Defendant is unreliable and inadmissible as a statement against penal interest. Even if we did not adopt *Crawford*, under the analysis contained in our existing case law we would reach the same result.

### 4. Sufficiency of Evidence

■ {23} Defendant contends the evidence is insufficient to support his convictions for possession of marijuana with intent to distribute, and conspiracy to possess marijuana with intent to distribute. We review the evidence to determine whether any rational jury could have found each element of the offense proven beyond a reasonable doubt. *See State v. Garcia*, 114 N.M. 269, 274, 837 P.2d 862, 867 (1992). The elements of possession of marijuana with intent to distribute are that Defendant had marijuana in his possession; knew it was marijuana; and intended to transfer it to another. *See* UJI 14–3111 NMRA. The elements of conspiracy to commit possession of marijuana with intent to distribute are that Defendant and another person by words or acts agreed to commit the offense of possession of marijuana with intent to distribute. *See* UJI 14–2810 NMRA.

■ {24} Defendant contends that without the inadmissible statement of Duarte–Munoz, the evidence is insufficient because all that remains is that Defendant was merely present where the marijuana was found. Defendant misunderstands our task. In determining whether the case should be remanded for retrial, we evaluate whether all the evidence, including the wrongfully admitted evidence, is sufficient to support a conviction. If so, retrial following appeal is not barred. *State v. Post*, 109 N.M. 177, 181, 783 P.2d 487, 491 (Ct.App.1989). There was evidence that Defendant was found in the stash house, that the smell of marijuana was strong and obvious, that there was a large quantity of marijuana in the basement, and that Defendant tried to escape from the police when the investigation turned up marijuana, even punching one of the officers. Once subdued, Defendant threw up, and slammed his head on the floor, like "a child throwing a temper tantrum." A reasonable jury could view Defendant's behavior as a strong reaction by someone who possessed—and just lost—a relatively large quantity of marijuana. The quantity seized is enough by itself to provide support for a finding of intent to sell. There was also evidence that Duarte–Munoz had just obtained marijuana from the same place where Defendant was present with the remaining marijuana. We conclude that these facts are sufficient to allow a rational jury to find Defendant guilty of possession with intent to distribute, and conspiracy. *See State v. Jacobs*, 2000–NMSC–026, ¶ 15, 129 N.M. 448, 10 P.3d 127(stating that flight is evidence of consciousness of guilt); *State v. Hernandez*, 1998–NMCA–082, ¶¶ 7–14, 125 N.M. 661, 964 P.2d 825 (rejecting the defendant's argument that the evidence was insufficient because the drugs were hidden, where the van smelled

strongly of marijuana, other odors suggested that paint and silicone were being used to mask the smell, and physical alterations to the van should have been apparent to the defendant); *State v. Donaldson,* 100 N.M. 111, 118–19, 666 P.2d 1258, 1265–66 (Ct.App. 1983) (stating that proof of possession of a large quantity of a controlled substance is sufficient proof of trafficking); *State v. Johnston,* 98 N.M. 92, 95, 645 P.2d 448, 451 (Ct. App.1982) (stating that conspiracy is rarely susceptible of direct proof, and that circumstantial evidence is sufficient to support a conspiracy conviction).

{25} For these reasons, we reverse and remand for a new trial.

{26} **IT IS SO ORDERED.**

I CONCUR: MICHAEL E. VIGIL, Judge.

IRA ROBINSON, Judge, concurring in result only.